In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00218-CV**

_____

**IN THE ESTATE OF EDITH ANN HAMNER**

**On Appeal from the County Court at Law No. 2**
**Montgomery County, Texas**
**Trial Cause No. 11-28651-P**

**MEMORANDUM OPINION**

In this will contest case, we are asked to decide whether the trial court erred by granting a motion for directed verdict favoring the proponent of the testatrix's 1997 will. In three issues, the appellants argue that the trial court improperly granted the motion for directed verdict, erred by admitting the testatrix's 1997 will for probate, and erred by denying a post-trial motion, which asked the trial court to reform some of the language in the final judgment. We affirm.

1

## Background

In 1997, shortly before she married Galze Hamner, Edith Hamner executed a will. Edith's 1997 will left her home in Willis, Texas, to her three children from a prior marriage, Otha Dan Osborn Jr. (Danny), Pamela Sue Satterfield, and John Walter Osborn. After marrying, Edith and Galze moved to another house, and Edith sold the house identified in her 1997 will.

In 2011, Edith died, survived by Galze and her three adult children. In 2012, Galze filed an application asking to probate Edith's 1997 will, which also named him as the independent executor of Edith's estate. After appearing in the probate proceeding, Edith's children opposed Galze's request to admit Edith's 1997 will for probate. In their pleadings opposing the will, Edith's children alleged that Edith revoked her 1997 will. However, Edith's children did not file another will for probate; instead, they alleged that Galze refused to help them find Edith's subsequent will. Alternatively, they alleged that Galze had destroyed it.

The case was tried before a jury in 2013. During the trial, Galze testified that he and Edith married in 1997, that Edith died in Montgomery County in 2011, and that Edith made her 1997 will shortly before they married. He also testified that Edith's 1997 will was never revoked.

Edith's children and two other witnesses (Edith's sister, Helen Connell; and Edith's grandson, John Nicholas Osborn) testified at the request of Edith's children. Galze also testified at trial. Nevertheless, we find only sparse testimony in the record that suggests that Edith executed a subsequent will. Helen, Edith's sister, testified that she and Edith were close. According to Helen, she had knowledge about Edith's affairs. Helen explained that after Edith and Galze married, Edith told her on one occasion that she and Galze "had just gone and made their -- their -- changed their wills[.]" However, Helen also explained that she never saw the will that Edith was referring to in the conversation, that she did not know who might have signed as witnesses to that will, that Edith did not tell her what was in the will, nor did she know who might have drafted it.

Edith's son, John, also testified that he and his mother had a close relationship. John explained that he felt his mother would not have excluded him from inheriting from her estate. According to John, in 2010, Edith showed him an envelope from a safe in the house where she and Galze lived; John recalled that the envelope had writing on it indicating the envelope contained a will. John acknowledged that he did not see or read the will in the envelope, he agreed that he did not know if Edith signed the document inside the envelope, and he explained that he did not know if the document was either witnessed or notarized. According

3

to John, the day Edith died, he looked in the safe for the envelope but he was unable to find it. John explained that no one knew what happened to the envelope in the safe. John also testified that while the family was at the hospital, the family met with Galze at his request shortly after Edith's death. During the meeting, Galze told them that "Danny was [the] executor of [Edith's] estate[.]" During the trial, John acknowledged that Galze never told him that there was another will.

Danny's testimony also provides only meager evidence suggesting that Edith executed a will that replaced her 1997 will. At trial, Danny testified: "[M]aybe there is another will that [Galze] didn't [produce]." Additionally, Danny testified that the lawyer who drew Edith's 1997 will told him that he did not recall preparing any other wills for her. While Danny's testimony suggests the possibility that Edith made another will, it offers insufficient support for the conclusion that she did so.

Danny also testified about another meeting that occurred with Galze after Edith's death. According to Danny, Galze agreed during the meeting that part of Edith's estate should go to her children. After that meeting occurred, the testimony indicates that Galze was presented with two different agreements containing proposals to transfer half of the interest to the house where Galze and Edith were living upon her death. However, the testimony indicates that Galze never agreed to

4

either proposal. This testimony tends to support the trial court's conclusion that Edith never revised her 1997 will before she died.

Edith's daughter, Pamela, testified that she and Edith were very close and they talked all the time. According to Pamela, the only document she saw indicating that she was to inherit from her mother was Edith's 1997 will. Pamela also agreed that she had never seen a will dated after Edith's 1997 will, that her mother never told her that she made a later will, that Edith did not rely on her to help her with her affairs, and that she had no proof that Galze had destroyed any of Edith's wills.

The testimony of Edith's grandson, John Nicholas, addressed his duplication of recorded conversations that Edith's children recorded involving Galze. He did not testify that Edith made a will that revoked her 1997 will.

After the parties contesting Edith's will rested, Galze moved for a directed verdict, arguing that no probative evidence had been introduced during the trial to show that Edith revoked her 1997 will. The trial court agreed and granted "the directed verdict with regard to there being no evidence in the trial record that there was a revocation of the will that has been offered for probate in this case." At that point, the attorneys for the parties agreed to allow the trial court to determine the remaining issues.

After directing a verdict, the trial court heard additional testimony relevant to the remaining issues, admitted Edith's 1997 will for probate, and appointed Galze to serve as the independent executor of Edith's estate. The final judgment recites that Edith's children "agreed that the Will of Edith Ann Hamner ought to be admitted to Probate." John and Pamela challenged that finding in a post-trial motion, which the trial court denied, and they appeal.[1]

## Directed Verdict

### *Standard of Review*

"A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). We review directed verdicts using the same standard used to review a challenge asserting that legally insufficient evidence supports a judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). When reviewing a directed verdict, we consider all the evidence in the light that is most favorable to the nonmovant, and we resolve all reasonable inferences that arise from the evidence admitted at the trial in the nonmonvant's favor. *In re Estate of Sidranksy*, 420 S.W.3d 90, 95 (Tex. App.—El

---

[1]Danny did not join the post-trial motions to modify the judgment nor is he a party to the appeal.

6

Paso 2012, pet. denied) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003)).

*Analysis*

Texas law provides the manner in which a testator may revoke a prior will. Tex. Est. Code Ann. § 253.002 (West 2014).[2] To revoke a prior will, section 253.002 of the Estates Code provides:

> A written will, or a clause or devise in a written will, may not be revoked, except by a subsequent will, codicil, or declaration in writing that is executed with like formalities, or by the testator destroying or canceling the same, or causing it to be destroyed or canceled in the testator's presence.

*Id.*

During the trial, Edith's children did not claim that Edith failed to execute her 1997 will with the formalities required by the Estates Code to allow the will to

---

[2]When the matters discussed in the opinion were before the trial court, the Texas Probate Code applied. Effective January 1, 2014, the Probate Code was repealed; it was substantially replaced by the new Texas Estates Code. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, 1512-1732 (§§ 10-12 reflect the effective date of the Texas Estates Code and the repeal of the Texas Probate Code), *amended by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, 2011 Tex. Sess. Law Serv. 1901, 1901-2095 (West); Act of May 9, 2013, 83rd Leg., R.S., ch. 161, art. 6, 2013 Tex. Sess. Law Serv. 623, 633-657 (West). Section 63 of the Probate Code contained a provision that, for the purposes of this case, was not materially different than the provision in the Estate's Code that we have cited. *See* Act of March 17, 1955, 54th Leg., R.S., ch. 55 , § 1, sec. 63, 1955 Tex. Gen. Laws 88, 108, *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 10-11, 2009 Tex. Gen. Laws 1512, 1731-32.

be admitted for probate. *See id.* §§ 256.151, 256.152 (providing the various requirements that are necessary to allow the trial court to probate a self-proving will) (West 2014).[3] Instead, Edith's children alleged that by signing another will, Edith revoked her 1997 will.

However, there is no evidence in the record that Edith executed a later will; instead, the evidence offered by Edith's children arouses only a mere suspicion that she might have done so. To reach the ultimate conclusion that Edith executed another will, the factfinder is required to stack inference upon inference from the testimony admitted during the trial. For example, Helen's testimony that Edith told her she changed her will requires a factfinder to infer that the "change" Edith was referring to in her conversation with Helen was a revocation, not merely a codicil to her existing will. And, from this same testimony, the factfinder would be required to further infer that the "change" was one that Edith made with the

---

[3]Sections 84 and 88 of the Texas Probate Code addressed the requirements for admitting a will for probate; those requirements, for the purposes of this case, did not materially differ from the ones found in the Estate's Code. *See* Act of May 29, 2011, 82nd Leg., R.S., ch. 1338, § 1.17, 2011 Tex. Gen. Laws 3884, 3892-893 (pertaining to section 84(a) of the Probate Code); Act of May 22, 1969, 61st Leg., R.S., ch. 641, § 8, 1969 Tex. Gen. Laws 1922, 1925 (pertaining to section 88(b) of the Probate Code); Act of March 17, 1955, 54th Leg., R.S., ch. 55, § 1, sec. 88, 1955 Tex. Gen. Laws 88, 117-18 (pertaining to section 88(a), (c), (d), and (e) of the Probate Code); all Texas Probate sections *repealed by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 10-11, 2009 Tex. Gen. Laws 1512, 1731-32.

formalities that Texas law requires to revoke a will. *See id.* § 253.002; *see also Brackenridge v. Roberts*, 267 S.W. 244, 247 (Tex. 1924).

John's testimony about the envelope in the safe also requires inference stacking to reach the ultimate conclusion that the envelope in the safe contained a later will. First, the factfinder would need to infer from John's testimony that a will was actually in the envelope he saw, and from that inference, the factfinder would then be required to infer both that the will in the envelope was a later will and that the will was properly executed.

The statement Galze made about Danny being named as an executor in a family meeting that occurred a short time after Edith's death is also no evidence showing that Edith executed another will. Edith's 1997 will names Danny as an alternate executor of her estate, so Galze's statement, accepting it as true, is a representation that is not inconsistent with Edith's will. This evidence, even if it amounts to some evidence that Galze saw another will that differed from the 1997 will, does not support the additional inference that the will Galze referred to in his statement was one that was properly executed.

Evidence amounts to no more than a scintilla and is legally no evidence "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence[.]" *Kindred v. Con/Chem, Inc.*,

9

650 S.W.2d 61, 63 (Tex. 1983). "Suspicion linked to other suspicion produces only more suspicion, not some evidence." *In re Estate of Shamoon*, No. 13-03-312-CV, 2005 WL 1831705, at \*2 (Tex. App.—Corpus Christi 2005, pet. denied) (mem. op.). To be more than a mere scintilla, the evidence showing that Edith revoked her 1997 will must rise "'to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (additional citations omitted)).

Under the facts of this case, to successfully raise an issue of material fact on their claim that Edith revoked her 1997 will by executing another will, Edith's children are required to demonstrate that the evidence admitted at trial would allow a reasonable factfinder to infer that Edith's later will was a will that complied with the requirements of section 253.002 of the Estates Code. *See* Tex. Est. Code Ann. § 253.002; *Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex. 2001) (Phillips, C.J., concurring and dissenting; plurality of five of seven justices). When the circumstantial evidence that supports an inference is so slight that any plausible inference is purely a guess, it is in legal effect no evidence. *See Lozano*, 52 S.W.3d at 148. And, while circumstantial evidence is not legally insufficient merely because more than one reasonable inference may be drawn from it, "vital facts may

not be proved by unreasonable inferences from other facts and circumstances[]" or "by piling inference upon inference[.]" *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968); *Howard Hughes Med. Inst. v. Neff*, 640 S.W.2d 942, 949 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

It was undisputed that Edith did not revoke her 1997 will by destroying it, as the original was admitted as an exhibit during the trial. *See* Tex. Est. Code Ann. § 253.002. Additionally, none of the witnesses testified that they had seen Edith's signature on a document purporting to be a will that post-dated Edith's 1997 will, nor is there any testimony that anyone saw a document that Edith signed which stated that she was revoking her prior will. *See Covington v. McDonald*, 307 S.W.2d 335-36 338 (Tex. Civ. App.—Texarkana 1957, no writ) (concluding that directed verdict was proper where there was no evidence showing that the will had been revoked or that another will had been executed with the formalities required by statute). Finally, there was no testimony demonstrating that Edith executed a later will with the formalities that she observed when making her 1997 will. We conclude the trial court did not err by concluding that the evidence adduced at trial was insufficient to allow a reasonable inference that Edith revoked her 1997 will. We overrule John and Pamela's first and second issues.

11

Motion to Modify Judgment

In their third issue, John and Pamela argue the trial court erred by denying their motion to modify the judgment. In the motion to modify, John and Pamela alleged that after the trial court directed a verdict in Galze's favor, they did not agree that Edith's 1997 will "ought to be admitted to Probate[,]" a finding that is contained in the final judgment.

*Standard of Review*

We review a trial court's denial of a motion to modify a final judgment for abuse of discretion. *See Wagner v. Edlund*, 229 S.W.3d 870, 879 (Tex. App.—Dallas 2007, pet. denied); *Ferguson v. Naylor*, 860 S.W.2d 123, 127 (Tex. App.—Amarillo 1993, writ denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

*Analysis*

After granting Galze's motion for directed verdict, the trial court discussed with the parties if they desired to try the remaining issues to the jury. The attorney for Edith's children informed the trial court that while he believed the evidence was sufficient to raise a genuine issue of fact on whether Edith revoked her 1997

12

will, he agreed to submit any remaining issues regarding whether the 1997 will should be admitted for probate to the trial court. After hearing additional evidence, the trial court orally pronounced that it would admit Edith's 1997 will for probate, and that it would appoint Galze as the independent executor of Edith's estate. Nine days later, the trial court signed the final judgment.

In the affidavits included with the motion to modify the judgment, John and Pamela state that they discharged their attorney after the trial, and that they did not agree to the recital in the proposed final judgment stating that they agreed to the admission of Edith's 1997 will for probate. John and Pamela argue that their former attorney, when he signed the judgment that contains the recital to which they object, was not authorized to sign the judgment on their behalf.

However, John and Pamela appealed only the trial court's decision to direct a verdict on the issue of whether their mother revoked her 1997 will by executing a later will; they have not raised any other issues that assert the trial court erred for other reasons in deciding to admit the 1997 will for probate. *See* Tex. Est. Code Ann. §§ 256.151, 256.152. Even if the trial court should have granted their motion and modified the judgment by striking the language about which they complain, we have reviewed their complaint that the trial court erred by granting Galze's motion for a directed verdict, and this is the issue they challenge on appeal with

13

respect to the probate of Edith's will. Since the issues that John and Pamela advanced in their briefs to probating Edith's will were addressed on their merits, the trial court's error, if any, in failing to grant their motion to modify was harmless. Tex. R. App. P. 44.1(a).

Because the appellants have not shown the trial court rendered an improper judgment or that they were prevented from presenting the merits of their issues for review, the trial court's judgment is affirmed.

AFFRIMED.

_____
HOLLIS HORTON
Justice

Submitted on September 2, 2014
Opinion Delivered February 5, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.

14