**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00035-CV**

_____

**JOSE VELASQUEZ SOSA, Appellant**

**V.**

**MONTGOMERY COUNTY, Appellee**

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 19-07-09455-CV

**MEMORANDUM OPINION**

Appellant Jose Velasquez Sosa ("Velasquez") appeals a take nothing judgment on his personal injury suit against Appellee Montgomery County. In one issue, Velasquez complains the trial court erred by granting a directed verdict for Montgomery County on the basis of causation. We reverse the trial court's judgment and remand the case for a new trial.

1

BACKGROUND

Velasquez and Ludivina Mateos, a Montgomery County employee, were involved in a motor vehicle collision, and Velasquez was allegedly injured as a result of that incident. Velasquez sued Mateos and Montgomery County, alleging causes of action for negligence, gross negligence, and negligence per se. Mateos and Montgomery County denied the allegations and pleaded the affirmative defenses of official and governmental immunity. Mateos and Montgomery County filed a Motion to Dismiss Mateos under section 101.106(e) of the Texas Civil Practice and Remedies Code, arguing that it was undisputed that Mateos was driving a county vehicle and her conduct was within the scope of her employment with Montgomery County. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e). As to Mateos, the trial court dismissed the claims Velasquez brought against her with prejudice, since no dispute existed about whether she was in the course and scope of her employment for the County when she collided with Velasquez.

Velasquez's claims against Montgomery County proceeded to trial. Velasquez testified that he was turning into work when he was struck from behind. Velasquez testified that he felt a little pain after the accident, so he went to work, but after his shift was over, he "felt a lot of pain all over my body and my back, my neck, my shoulders, my knees." Velasquez explained that he went to the emergency room the day after the accident because he had headaches and pain, and he was sent for x-

2

rays, prescribed pain medication, and referred to a chiropractor. Velasquez testified that after he saw Dr. Africa Trent, a chiropractor, and had an MRI, Dr. Trent referred him to an orthopedist, who diagnosed him with herniated discs in his neck and low back and torn tendons in his knee. Velasquez explained the orthopedist gave him pain medication and recommended surgery for his knee and injections in his neck and back, and he denied seeing any doctors for neck, back, or knee pain prior to the accident. Velasquez had surgery on his right knee and injections, which helped his neck and back. Velasquez testified that he did not have any underlying health conditions prior to the accident, and the accident affected his work performance. Velasquez explained that after his knee surgery he had a blood clot that required medication, he fell on his knee and had to go to the emergency room, and he was in two more motor vehicle accidents.

Trooper Benjamin Polansky of the Texas Department of Public Safety testified that when he responded to the traffic accident involving Velasquez and Mateos, he observed "very minor damage" to both vehicles and that the air bags did not deploy. Trooper Polansky testified that Velasquez was walking around the crash scene and did not appear to be injured or report being in any pain, and Trooper Polansky explained he spoke in English to Velasquez, who did not indicate he did not understand the conversation. Trooper Polansky explained that he asked if anyone needed emergency medical services ("EMS") and that Velasquez did not want him

3

to make a crash report because Velasquez only wanted to exchange insurance information with Mateos. Trooper Polansky prepared a crash report and cited Mateos for failing to control her speed and cited Velasquez for driving without a license.

Sergeant Daniel Savage of the Montgomery County Sheriff's Office testified that when he responded to the accident, he spoke to Velasquez, who seemed to understand "a little bit of broken English." Sergeant Savage testified when he spoke to the parties about whether EMS needed to respond to the scene, neither party requested EMS, and Velasquez appeared to understand what EMS meant. Sergeant Savage further testified that the accident was "[v]ery minor[]" and that neither party appeared to be injured.

Mateos testified that she was driving on the feeder road behind Velasquez when he "abruptly stopped" to let one of the trucks exit the concrete place. Mateos explained that Velasquez did not use his turn signal, and when she saw his brake lights, she could only stop because there was a vehicle in the other lane. Mateos described the collision as "a tap[,]" and she explained that Velasquez told her to just give him her insurance and information and he would just leave. Mateos explained that she spoke to Velasquez in Spanish and explained that she could not do that because she was driving a county vehicle. Mateos testified that Velasquez did not appear injured or need an ambulance, and she did not observe any damage to the vehicles.

4

Dr. Samuel Maxwell Adu-Lartey, a board-certified orthopedic surgeon, testified that he treated Velasquez after the accident. Dr. Adu-Lartey explained that he reviewed Velasquez's records from the emergency room, which indicated Velasquez had injuries to the neck, upper back, lower back, mid-back, right shoulder, left shoulder, right knee, right leg, right ankle, left knee, left leg, and left ankle. Dr. Adu-Lartey testified that Velasquez's emergency room records included a CT scan and a diagnosis of acute neck pain associated with a cervical strain and sprain, probable acute trauma from lumbar back pain associated with a muscle strain or sprain, and probable chest pain characterized from discomfort from a motor vehicle traffic accident. Dr. Adu-Lartey assessed Velasquez with neck pain, mid-back pain, right and left knee pain, and lower back pain and that Velasquez's cervical and lumbar sprains and strains are considered soft tissue musculoskeletal injuries which are normally treated by a chiropractor. Dr. Adu-Lartey testified that Velasquez reported that before the collision, he did not have a history of neck pain, mid-back pain, lower back pain, or knee pain.

Dr. Adu-Lartey referred Velasquez for pain management, and he explained that Velasquez saw Dr. Africa Trent for chiropractic treatment. Dr. Adu-Lartey testified that Velasquez had MRIs of his lumbar spine, thoracic spine, cervical spine, right knee, and left knee. Dr. Adu-Lartey explained that Velasquez's MRI of his cervical spine showed some disc protrusion, some stenosis or pinching of the nerve,

5

pinching of the spinal cord, and a little slip of the vertebra. Dr. Adu-Lartey explained that Velasquez's MRI of his lumbar spine showed disc protrusion or disc herniation and stenosis. Dr. Adu-Lartey testified that stenosis and disc protrusion can be a degenerative condition, caused by trauma, or both, and he explained that "unless you have a prior MRI, it's tough to say what exactly caused that."

Dr. Adu-Lartey explained that Velasquez's MRI of his right knee showed a tear in the meniscus, a ligament sprain, osteoarthritis, and a cyst in the back of his knee, and Dr. Adu-Lartey made the same findings regarding Velasquez's left knee, which had swelling and debris. Dr. Adu-Lartey testified that a cyst can develop due to degeneration, trauma, or both and that osteoarthritis is a degenerative condition. Based on the MRIs, Dr. Adu-Lartey recommended pain management, including injections for the neck and lower back, and surgery on both knees. Dr. Adu-Lartey performed surgery on Velasquez's right knee and referred him to physical therapy. Dr. Adu-Lartey also testified that he sent Velasquez for an ultrasound test which indicated he had a deep vein thrombosis, and Velasquez sought treatment from another doctor.

After Velasquez presented his case, Montgomery County moved for a directed verdict on the issue of causation, and the trial court granted Montgomery County's motion for directed verdict and explained that Velasquez failed to meet the threshold for legally sufficient expert evidence of causation on soft tissue injuries. The trial

6

court stated that Dr. Adu-Lartey did not testify about the sole or proximate cause of Velasquez's injuries, and that he testified the cause of Velasquez's injuries could be degenerative, trauma, or both and that it was difficult to assess without a prior MRI.

Velasquez argued that the medical records proved causation. The trial court explained that to constitute evidence of causation, the statements of treating physicians found in medical records must read like expert witness testimony that is admissible under Rule 702. *See* Tex. R. Evid. 702. After reviewing the medical records Velasquez claimed proved causation, the trial court stated that the conclusory testimony in the medical records that Velasquez pointed out is lay testimony regarding pain due to the accident, which is not sufficient opinion testimony. The trial court explained that to constitute competent evidence of causation, a medical expert's opinion must be reliable and rest in reasonable medical probability. The trial court found that there was nothing in the medical records showing that the doctors had based their opinions on a reasonable degree of medical certainty and that the opinions were conclusory. In its Final Judgment, the trial court found that Velasquez's evidence, witness testimony, and exhibits failed to establish with legal sufficiency the element of causation for his sole claim of negligence. The trial court denied Velasquez's Motion to Modify Judgment and Motion for New Trial.

ANALYSIS

In his sole issue on appeal, Velasquez complains the trial court erred by granting a directed verdict for Montgomery County based on lack of causation. Velasquez argues that he presented sufficient evidence of causation and the trial court erred by ruling that his testimony, medical records, and the testimony of Dr. Adu-Lartey failed to establish a causal link between the accident and his damages. Montgomery County contends Velasquez's lay testimony did not provide competent medical evidence about his soft tissue injuries; his medical records contain bare proclamations that are unreliable and that do not rest in reasonable medical probability; and Dr. Adu-Lartey's testimony failed to establish causation because he admitted he could not determine whether Velasquez's injuries were caused by degenerative disease, trauma, or both.

We review directed verdicts using the same standard used to review a challenge asserting that legally sufficient evidence does not support a judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). In reviewing a trial court's granting of a directed verdict, we must determine whether there is more than a scintilla of evidence to raise a fact issue on each element of the plaintiff's claim. *See Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). We consider all the evidence in the light most favorable to the nonmovant and resolve all reasonable inferences that arise from the evidence

admitted at trial in the nonmovant's favor. *Id.* at 234; *Estate of Sidransky*, 420 S.W.3d 90, 95 (Tex. App.—El Paso 2012, pet. denied) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003)). A trial court may properly direct a verdict if no evidence of probative force raises a fact issue on the material questions in the lawsuit. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). However, if the evidence supporting a finding on each element rises to a level that would enable reasonable and fair-minded people to differ in their conclusions, it constitutes more than a scintilla of evidence and the case must be reversed and remanded for a jury determination. *Coastal Transp. Co., Inc.*, 136 S.W.3d at 234.

To prevail on his negligence claims, Velasquez had to establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Roberts v. TXU Energy Retail Co. LP*, 171 S.W.3d 901, 903 (Tex. App.—Beaumont 2005, no pet.). In negligence cases, the plaintiff must establish two causal nexuses: (1) between the defendant's negligent act and the occurrence; and (2) between the occurrence and the plaintiff's alleged injuries. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984); *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 684 (Tex. App.—Dallas 2000, no pet.). "The causal nexus between the event sued on and the

plaintiff's injuries must be shown by competent evidence." *Morgan*, 675 S.W.2d at 732 (citations omitted).

Velasquez argues that his own testimony, along with Dr. Adu-Lartey's testimony, and his medical records established a causal link between the accident and his injuries. "[W]hen an accident victim seeks to recover medical expenses, []he must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)). Generally, expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara*, 247 S.W.3d at 665 (citations omitted). If the evidence presents "'other plausible causes of the injury or condition that *could* be negated, the [proponent of the testimony] *must* offer evidence excluding those causes with reasonable certainty.'" *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (citations omitted). Additionally, "[w]hen expert testimony is required, lay evidence supporting liability is legally insufficient." *City of Keller*, 168 S.W.3d at 812 (citing *Bowles v. Bourdon*, 219 S.W.2d 779, 782–83 (Tex. 1949)).

However, lay testimony may support a causation finding that links an event with a person's physical condition in cases in which general experience and common sense enable a layperson to determine the causal relationship with reasonable

10

probability. *Hills v. Donis*, No. 14-18-00566-CV, 2021 WL 507306, at *4 (Tex. App.—Houston [14th Dist.] Feb. 11, 2021, pet. denied) (mem. op.) (citing *Guevara*, 247 S.W.3d at 666) (other citation omitted). Some injuries for which Velasquez sought compensation–disc protrusions, stenosis, cervical and lumbar sprains and strains, pinched nerve and spinal column, slipped vertebrae, meniscus tear, ligament sprain, osteoarthritis, a cyst, and deep vein thrombosis–are neither common nor basic. *See Guevara*, 247 S.W.3d at 669–70; *City of Laredo v. Garza*, 293 S.W.3d 625, 632–33 (Tex. App.—San Antonio 2009, no pet.) (concluding plaintiff needed more than lay testimony to prove accident caused disc herniations, radiculopathy, and complex regional pain syndrome) (citations omitted); *McGee v. Tatum*, No. 05-21-00303-CV, 2022 WL 17248174, at *5 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op.) (concluding stenosis and lumbar and cervical strains and soft-tissue back and neck injuries are medical conditions outside the common knowledge and experience of jurors); *Hills*, 2021 WL 507306, at *4 (concluding expert testimony needed to prove causation for disc herniation); *Sanchez v. Leija*, No. 01-19-00165-CV, 2020 WL 7349094, at *3 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.) (concluding expert testimony needed to prove causation for ligament sprain). As such, these claims do not fall within the kinds of "basic" injuries identified in *Guevara* in which expert testimony regarding the causal connection

11

between an occurrence and a physical condition is unnecessary. *See Guevara*, 247 S.W.3d at 667; *Hills*, 2021 WL 507306, at *4.

Velasquez needed expert testimony to establish a causal connection between the accident and his injuries that fall outside the common knowledge and experience of jurors. *See Hills*, 2021 WL 507306, at *4. The record shows that Dr. Adu-Lartey testified that Velasquez had stenosis and disc protrusion in his lumbar and cervical spine, but he did not testify that the accident caused those injuries. Rather, Dr. Adu-Lartey testified that Velasquez's stenosis and disc protrusion could have been caused by a degenerative condition, trauma, or both and that without a prior MRI it was "tough to say what exactly caused that." Dr. Adu-Lartey also testified that the cyst in Velasquez's knee could have developed due to degeneration, trauma, or both and that his osteoarthritis is a degenerative condition. Dr. Adu-Lartey's testimony not only fails to provide evidence of causation, it also demonstrates that causation could not be determined. Dr. Adu-Lartey's testimony does not provide the necessary link between the diagnosed injuries and the accident, and absent this link, we conclude Dr. Adu-Lartey's testimony is unreliable speculation that does not constitute sufficient evidence of causation. *See Hills*, 2021 WL 507306, at *5 (citing *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010)).

However, some of the conditions about which Velasquez complains fall within the common knowledge and experience of jurors and would enable a

layperson to determine the causal connection with reasonable probability. *See id.* at *4 The record contains lay testimony about Velasquez's pre-accident physical condition and the post-accident events, including his medical treatment at the emergency room. This type of evidence "'establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition' could suffice to support a causation between the automobile accident and basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, cause by automobile accident." *Guevara*, 247 S.W.3d at 667. "Evidence of an event followed closely by manifestation of or treatment of conditions which did not appear before the event raises suspicion that the event at issue caused the conditions[,]" and when such evidence is combined with causation evidence, "evidence that conditions exhibited themselves or were diagnosed shortly after an event may be probative in determining causation." *Id.* at 668. Thus, certain types of pain and basic conditions following an automobile accident, such as temporary neck and back pain, can be within the common experience of lay jurors, and non-expert evidence of circumstances surrounding the accident and Velasquez's complaints following the accident may be sufficient to allow a layperson of common knowledge and experience to determine that some of Velasquez's immediate post-

13

accident complaints and conditions which resulted in his emergency room treatment were causally related to the accident. *Id.* at 668–69 (citations omitted).

Velasquez's Petition includes claims for past medical expenses; past lost wages; past pain, suffering and mental anguish; past physical impairment; and past physical disfigurement. The day following the accident, Velasquez went to the emergency room complaining of a headache and pain in his neck, back, shoulders, knees, leg, and ankle. Velasquez testified that he went to the emergency room because he had headaches and "felt a lot of pain all over my body and my back, my neck, my shoulders, my knees." Velasquez testified that he did not have any underlying health conditions prior to the accident. Velasquez's medical records from the emergency room, which were admitted without objection, show that he received treatment for his complaints of pain, including diagnostic testing and medication. The emergency room records show that Velasquez had acute neck pain associated with cervical strain and sprain; probable acute traumatic lumbar back pain associated with muscle strain and sprain; probable chest pain related to seat belt tightening; and acute nontraumatic pain in the head and upper and lower back.

Velasquez also filed a Medical and Billings Records Affidavit concerning the cost and necessity of services for his emergency room treatment, which was admitted without objection. Section 18.001(b) provides that:

> Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was

reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary. The affidavit is not evidence of and does not support a finding of the causation element of the cause of action that is the basis for the civil action.

Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b); *see In re Allstate Indemnity Co.*, 622 S.W.3d 870, 876–77 (Tex. 2021) (orig. proceeding). The record before us does not contain a counter-affidavit as to the emergency room treatment. As such, Velasquez's Affidavit was sufficient evidence to support a finding of fact by the jury that the amount charged for the emergency room treatment was reasonable and that the service was necessary, although it is not evidence of and does not support a finding of causation. However, pursuant to *Guevara*, non-expert evidence of circumstances surrounding the accident and Velasquez's complaints following the accident may be sufficient to allow a layperson of common knowledge and experience to determine that some of Velasquez's immediate post-accident conditions which resulted in his emergency room treatment were causally related to the accident. *Guevara*, 247 S.W.3d at 668–69. Therefore, there was a rebuttable presumption that the emergency room treatment charges were reasonable and necessary, and that the services were proximately caused by the accident. *See id.*

We conclude that there is more than a scintilla of evidence in the record showing the accident proximately caused some injuries to Velasquez for which he received emergency room treatment and the trial court erred by directing a verdict

15

in Montgomery County's favor. Accordingly, we sustain Velasquez's sole issue, reverse the trial court's judgment, and remand for a new trial.

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on March 1, 2023
Opinion Delivered April 20, 2023

Before Golemon, C.J., Horton and Johnson, JJ.